IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JASPER GORHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:05CV607 |
| | ) | |
| JOHN POTTER, Postmaster | ) | |
| General, United States Postal Service, | ) | |
| | ) | |
| Defendant. | ) | |

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

This matter comes before the Court on the motion for summary judgment filed by Defendant John Potter (Pleading No. 25.) Plaintiff Jasper Gorham has opposed the motion. (Pleading No. 30). Defendant has replied. (Pleading No. 36.)

**Factual and Procedural Background**

Plaintiff Jasper Gorham filed this employment discrimination action on July 7, 2005, alleging race discrimination by his former employer, the United States Postal Service ("USPS" or "Defendant") in violation of the Civil Rights Act of 1964. Gorham, a black male, claims that he was subject to race discrimination with respect to the terms and conditions of his employment, his pay, and disciplinary action taken against him. Gorham seeks actual and compensatory damages related to his discrimination claims and for the related claim of intentional infliction of emotional distress.

The underlying facts are undisputed unless otherwise noted. Gorham began to work for the USPS in 1986, and was employed for more than fifteen years. From approximately March 2002 to November 2002, Plaintiff was a supervisor at the Main Post Office in Chapel Hill, North Carolina. Plaintiff had worked as an acting (204B) supervisor for approximately two years before being promoted to full-time supervisor. In April 2002, Patrick Harkin became acting Postmaster, or "Officer in Charge," of the Chapel Hill post office. Plaintiff was terminated from his employment for disciplinary reasons on February 4, 2003.

Defendant has submitted declarations and other evidence tending to show that Plaintiff continuously struggled with his supervisory duties between April and November 2002. For example, Plaintiff failed to assign segments of routes properly; failed to take corrective action against carriers under his supervision when they violated Agency rules and regulations; failed to use computer systems available to him for managing his carriers; failed to comply with color coding and other administrative requirements; lost his composure and used profanity toward fellow supervisors; abused and misused penalty overtime; and falsified records to avoid obtaining Harkin's permission to use penalty overtime. (Pleading No. 26, Mem. in Supp. of Def.'s Mot. for Summ. J., Ex. A, Declaration of James Tarter ("Tarter Decl.") ¶¶ 6-7, 10, 20; Ex. B, Declaration of Patrick Harkin ("Harkin Decl.") ¶¶ 4-5, 8, 18.) Defendant also points to evidence that Harkin and/or Mike Pike counseled and disciplined Plaintiff a number of times (August 29, 2002, October 21, 2002, October 25,

2002) in response to Plaintiff's unacceptable job performance. (Harkin Decl., Exs. A-4 - A-6.)

The use of "penalty overtime" had become a particular problem in the Chapel Hill office. Penalty overtime is a rate of pay that is double the normal rate of pay, and occurs when an agency employee works more than 10 hours in one day or more than 5 straight days of overtime. On a number of occasions between April and July 2002, Harkin had discussions and counseling sessions with Plaintiff and the other supervisors regarding the use of penalty overtime. (Harkin Decl. ¶¶ 6-7.) According to Defendant, Harkin would tell Plaintiff not to use penalty overtime without getting approval from Harkin, but Plaintiff would ignore the approval procedure, authorize penalty overtime, and tell Harkin he simply forgot to obtain approval. (*Id.* ¶ 8.) Beginning in or about July 2002, Harkin strictly instructed his staff, including Plaintiff, that they were not to use penalty overtime to manage their carriers or ensure mail delivery, absent prior approval by Harkin. (Tarter Decl. ¶ 12, Exs. A-1 - A-3; Harkin Decl. ¶ 10.) Plaintiff does not deny his misconduct, but avers that Harkin told him verbally that he could take carriers off the clock and give them back their time in order to avoid penalty overtime. (Pleading No. 32, Declaration of Jasper Gorham ("Gorham Decl.") ¶¶ 7-8, 13.)

The USPS issued Plaintiff two disciplinary letters. The first letter was a Letter of Warning dated August 29, 2002 due to unacceptable performance. (Harkin Decl. ¶ 15, Ex. A-4.) The second one was a Proposed Letter of Warning issued in lieu of a 7-day

-3-

Case 1:05-cv-00607-WO   Document 45   Filed 12/18/07   Page 3 of 10

suspension. (*Id.* ¶ 17, Ex. A-6.) In the interim, Harkin had issued an unacceptable merit rating to Plaintiff, which the Manager of Post Office Operations approved on October 21, 2002. (*Id.* ¶ 16, Ex. A-1.)

In spite of the counseling and written warnings between July and October 2002, Plaintiff asked numerous letter carriers to work off-the-clock for some period of time and informed them that they could leave work early on other days but that Plaintiff would keep them on the clock those days so they would not lose any pay. (Tarter Decl. ¶ 20, Ex. A-7; Harkin Decl. ¶ 19.) Plaintiff falsified the carriers' time records in order to avoid having to use penalty overtime. Based on information provided by some of Plaintiff's own carriers, the National Association of Letter Carriers brought Plaintiff's conduct to Defendant's attention. (Tarter Decl. ¶ 21; Harkin Decl. ¶ 19.) Plaintiff was placed on Emergency Placement in an off-duty status and the Postal Inspection Service undertook a full investigation. (Tarter Decl. ¶ 22, Ex. A-8.)

On December 10, 2002, Harkin issued Plaintiff a notice in which he proposed to remove Plaintiff based on Plaintiff's alteration and falsification of postal records. (Tarter Decl. ¶ 27, Ex. A-10.) In recommending removal, Harkin took into consideration Plaintiff's entire disciplinary history as well as the serious nature of the offense of falsifying USPS time records and Plaintiff's initial denial of his misconduct. (Harkin Decl. ¶ 24.) Plaintiff was discharged on February 4, 2003, by action of James Tarter, Manager of Postal Operations for the Greensboro District. (Tarter Decl. ¶ 29, Ex. A-12.)

Plaintiff does not deny the circumstances that led to his termination, but asserts that he was overburdened as a result of under-staffing and lack of meaningful direction from his superiors on how to handle the overburdened district. (Pleading No. 30, Pl.'s Mem. in Opp'n at 4-5; Gorham Decl. ¶¶ 7-8, 13.) He avers that Harkin, off-the-record, told him to allow letter carriers to work off-the-clock in order to avoid paying penalty overtime. As evidence of discrimination, Plaintiff compares himself to Dean Fields, a white supervisor who manipulated a carrier's time records but received only a letter of warning, not termination.

Before the Court is the Defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Pleading No. 25.) Plaintiff opposes the motion. (Pleading No. 30.)

## Discussion

Summary judgment is appropriate where an examination of the pleadings, affidavits, and other proper discovery materials before the court demonstrates that no genuine issues of material fact exist, thus entitling the moving party to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the moving party has met that burden, then the nonmoving party must persuade the court that a genuine issue remains for trial. When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co.*

*v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citations and footnote omitted) (quoting Fed. R. Civ. P. 56). In considering a motion for summary judgment, the court is not to weigh the evidence, but rather must "determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The court must view the facts in the light most favorable to the non-movant, drawing inferences favorable to that party if such inferences are reasonable. *Id.* at 255. However, there must be more than a factual dispute; the fact in question must be material, and the dispute must be genuine. Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 248. A dispute is only "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Plaintiff claims that Defendant discriminated against him based on his race in violation of Title VII. Title VII of the Civil Rights Act of 1964 makes it an unlawful employment practice for an employer

> [T]o fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin.

42 U.S.C. § 2000e(a)(1). In order to prove a Title VII claim, an employee may proceed under ordinary principles of proof using direct or indirect evidence, or under the paradigm for indirect proof of employment discrimination set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To overcome a summary judgment motion based on direct or indirect evidence of discrimination, the plaintiff "'must produce direct evidence of a stated purpose to discriminate and/or [indirect] evidence of a sufficient probative force to reflect

a genuine issue of material fact.'" *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 607 (4th Cir. 1999) (*quoting Goldberg v. B. Green & Co., Inc.*, 836 F.2d 845, 848 (4th Cir. 1988).

In this case, Plaintiff relies on the alternative proof scheme established in *McDonnell Douglas*. Under that scheme, if the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason for its employment decision. 411 U.S. at 802. If the defendant does so, the presumption of discrimination drops from the case and the plaintiff must demonstrate that the defendant's stated reason for its action was, in fact, a pretext for improper discrimination. *Id.* at 804.

In order to establish a *prima facie* case of disparate discipline under Title VII, a plaintiff generally must show that (1) he engaged in prohibited conduct similar to that of a person of another race and (2) that disciplinary measures enforced against the plaintiff were more severe than those enforced against the other person. *See Taylor v. Virginia Union Univ.*, 193 F.3d 219, 234 (4th Cir. 1999).

Applying these principles to this case, Plaintiff has identified as the relevant comparator Dean Fields, a white male supervisor stationed at the Timberline Station in Chapel Hill in January 2003. It is undisputed that when Fields became supervisor, he inherited a situation from a previous supervisor wherein an employee had not been paid for time from December 2002. In resolution of a grievance filed by that employee, Fields allowed the employee to leave work early *one* day and added the time that was owed to the

-7-

employee to the total work hours for that day. As discipline for this single and isolated incident, Fields received a Letter of Warning in lieu of a 14-day suspension.

Defendant maintains that Fields is not a suitable comparator because he is not similarly situated to Plaintiff in relevant respects. Defendant points out that, among other things, Fields was differently situated from Plaintiff in that he had not been disciplined previously, was not trying to cover up penalty overtime, had no financial interest at stake, was guilty of only an isolated misconduct wherein he was trying to resolve a grievance he had inherited, and had a different supervisor than Plaintiff. In determining whether employees are similarly situated for purposes of establishing a *prima facie* case, courts generally require a significant similarity between the characteristics (types of position, types of conduct, disciplinary history, supervisor) of the compared employees. *See generally, Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000); *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997); and *Byrd v. Ronayne*, 61 F.3d 1026, 1032 (1st Cir. 1995). It is clear that there is no close identity in this case and, in fact, the undisputed evidence shows that Dean Fields is not a relevant comparator to Plaintiff. Accordingly, Plaintiff has failed to make out a *prima facie* case of racial discrimination.

Even assuming that Plaintiff could establish a *prima facie* case, Defendant has offered sufficient evidence of non-discriminatory reasons why Plaintiff was terminated. Particularly in view of the USPS's graduated disciplinary system and the escalating disciplinary action against Plaintiff, there is sufficient evidence of a non-discriminatory impetus for Plaintiff's

termination. In other words, the Defendant has clearly "articulated] some legitimate, non-discriminatory reason for its employment decision." *McDonnell Douglas*, 411 U.S. at 802.

Plaintiff is unable to make a sufficient showing, despite full discovery, that Defendant's proffered reason is merely a pretext for discrimination. Instead of challenging the accusations against him of falsification of records as untrue, Plaintiff relies on averments in his affidavit to the effect that Harkin actually ordered Plaintiff, off-the-written-record, to falsify the time records of letter carriers in order to avoid the payment of penalty overtime. Plaintiff argues that he was a scapegoat for Harkin's own efforts to avoid the payment of penalty overtime in his post office without providing Plaintiff with sufficient resources to get the work done. The problem with Plaintiff's counter-argument on this point is that, like his evidence regarding an alleged comparator who was treated differently, the evidence raises no reasonable inference of differential treatment based on *race*. That is, Plaintiff obviously believes he was treated unfairly in view of his supervisor's alleged *sub rosa* instructions to him – a subject of dispute – but there is no evidence to support a reasonable inference that his discipline or termination was based on race. It is undisputed that the ultimate decision-maker in this case who fired Plaintiff, Manager of Operations James Tarter, did so on the basis of Plaintiff's falsification of records, and Tarter's stated reason for the termination is simply not called into question, as pretextual, by Plaintiff's assertion that Harkin gave him conflicting instructions regarding penalty overtime. Accordingly,

Plaintiff's evidence is wholly insufficient to overcome summary judgment on his race discrimination case.

Plaintiff also asserts that he was denied compensation for time he worked beyond his regularly scheduled hours. Plaintiff's claim for such compensation should be denied. Supervisors are paid on a salary basis, and although under certain circumstances they may apply for and be paid compensation for time worked beyond their regularly scheduled hours, Plaintiff has provided no evidence that he properly applied for and was denied such compensation.

Finally, Plaintiff's state law claims under the public policy of North Carolina and for emotional distress should be denied for the foregoing reasons, as well as for lack of evidence that Plaintiff suffered the type of injury or trauma that would support a claim for emotional distress.

## Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that Defendant's motion for summary judgment (Pleading No. 25) be granted and that all of Plaintiff's claims be dismissed with prejudice.

/s/ P. Trevor Sharp
United States Magistrate Judge

Date: December 18, 2007